UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SIR CHRISTOPHER R. PAVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:03-CV-662 RM |
| | ) | |
| P. CONLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This case was filed *pro se* by Christopher R. Pavey. [Doc. No. 3]. The complaint was screened pursuant to 28 U.S.C. § 1915A, and Pavey was granted leave to proceed on a claim that he was subjected to an excessive use of force in violation of the Eighth Amendment when his arm was broken during a cell extraction at the Maximum Control Facility on October 14, 2001. [Doc. No. 4]. In their answers, the defendants asserted that Pavey had not exhausted his administrative remedies. [Doc. No. 17 and 19]. The defendants filed a motion for summary judgment [Doc. No. 30], and Pavey filed a response in opposition. [Doc. No. 39]. This Court granted summary judgment and the United States Court of Appeals for the Seventh Circuit reversed, finding that a genuine issue of fact existed as to the exhaustion of administrative remedies. Pavey v. Conley, 170 Fed. Appx. 4 (7th Cir. 2006) [Doc. No. 63] (hereinafter Pavey I). On remand, after the close of discovery, the case was set for trial. [Doc. No. 81]. Before trial, the defendants were granted leave to take an interlocutory appeal on a limited question: whether genuine issues of fact arising in an exhaustion of administrative remedies context

should be decided by the jury. [Doc Nos. 87 and 100]. The Circuit Court held that this type of genuine issue of fact was to be decided in a preliminary hearing without a jury. Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008) [Doc. No. 116] (hereinafter Pavey II). Following remand, the case was referred "to conduct a hearing to resolve the genuine issues of fact related to the exhaustion of administrative remedies and then to prepare a report and recommendation." [Doc. No. 117 at 1-2]. Therefore this matter is properly before the Court pursuant to 28 U.S.C. § 636(b)(1)(B). On June 3, 2010, the Court held an evidentiary hearing. [Doc. No. 160]. Pavey was represented by attorneys Ali I. Ahmed and Rebecca S. Bradley, and the defendants were represented by attorneys Betsy M. Eisenberg and Eric J. Beaver. Pamela Jean Bane, Brenda Jackson Nalls, Duane Vance Surney, Steven Gallegos, Donald Gambrel, and George Payne testified on behalf of the defendants. Pavey testified on his own behalf. Pavey also submitted two exhibits: Disciplinary Hearing Appeal IR01-10-0227 and Disciplinary Hearing Appeal IR01-10-0229. [Doc. No. 159-1 and 159-2].

I. **FINDINGS OF FACT**

At the hearing, Pamela Jean Bane, who was a case manager at the Maximum Control Facility in October 2001, testified that she had no recollection of ever having spoken to Pavey about his arm having been broken. Neither did she have any recollection of his having asked for assistance to prepare a grievance. Though she could not remember ever having been asked by any inmate to help prepare a grievance, she testified that if she had been asked, she would have assisted. She testified that she

2

checked Pavey's records and did not find that he had filed a grievance related to these events at the Maximum Control Facility. The Court finds Bane to be credible and credits her testimony.

At the hearing, Brenda Jackson Nalls, who was a sergeant at the Maximum Control Facility in 2001, testified that she spoke to Pavey about the cell extraction where his arm was broken. She testified that this conversation lasted only a couple of minutes and that it occurred when she was making rounds. She testified that Pavey told her that he had been extracted and that his arm had been broken. She testified that his behavior during the conversation was not unusual and that he did not complain, rather he was merely chit-chatting about what had happened. She testified that she did not ask him any questions and that he did not ask to speak to Lt. Surney. She was certain that he did not ask her for assistance to complete a grievance form. The Court finds Nalls to be credible and credits her testimony.

At the hearing, Duane Vance Surney, who was a lieutenant at the Maximum Control Facility in October 2001, testified that he had no recollection of speaking to Pavey about the cell extraction. He testified that he had no recollection of Pavey asking him to help fill out a grievance. Neither did he have any recollection of ever being asked for assistance to prepare a grievance by any inmate. He testified that he had not worked for the Indiana Department of Correction for more than eight years and that he had limited memory of the procedures, forms, and vocabulary used in that job. The Court found this part of Surney's testimony to be credible and credits that testimony. Based on

3

that testimony, it is clear that Surney did not remember much about what happened in October 2001 when he worked at the Maximum Control Facility. Therefore in crediting that testimony, the Court finds only that he could not remember. Surney also testified that it was possible that he talked to Pavey about the cell extraction, possible that he filed out a grievance for him, and possible that he gave it to Major Payne. This testimony is not creditable and the Court does not believe that he did any of those things. Surney simply could not remember. In the absence of actual memories, Surney merely agreed to a series of hypothetical questions about what might have happened because he did not have any actual memory about what did happen. But, based on the totality of the testimony presented at the hearing, it is not plausible that he actually did any of those things. His cautious effort to truthfully testify led him to simply agree that events that he did not remember could have happened. Surney's unfounded agreement to hypothetical questions is not a convincing basis for finding that those events actually occurred.

At the hearing, Steven Gallegos, who was a captain at the Maximum Control Facility in 2001, testified that he did not recall a cell extraction which resulted in Pavey breaking his arm. He testified that he had no recollection of ever having spoken to Pavey about those events. Neither did he have any recollection of any inmate asking for help to prepare a grievance. He testified that if he had been asked for help, he would have referred the matter to the grievance specialist for the prison. Like Surney, Gallegos could not remember. To that extent, the Court finds him to be creditable and credits his

4

testimony. He also testified that it is possible that Pavey asked for assistance, but again, like Surney, Gallegos' agreement with this hypothetical does not convince the Court that it actually occurred.

At the hearing, Donald Gambrel, who was a lieutenant at the Maximum Control Facility in October 2001, testified that he was the conduct adjustment board chairman. He testified that he had no recollection of Pavey (or any other inmate) ever asking him for help to write a grievance. Unlike Surney and Gallegos whose memories of the events were so faded that they did not know what happened, Gambrel's testimony was more certain. He was confident that he did not write a grievance for Pavey. Though he testified that it was possible that he spoke to Pavey after the cell extraction, he was not asked what that conversation was about nor when it might have occurred. Gambrel also testified that it was possible that he met with Pavey in Major Payne's office, but he was certain that Major Payne did not take photographs of Pavey and certain that he did not assist Major Payne to take photographs of Pavey. The Court found Gambrel to be credible and credits his testimony. However, based on the totality of the evidence presented at the hearing, Gambrel's agreement that a meeting in Major Payne's office was hypothetically possible does not convince the Court that it actually occurred. Like Surney and Gallegos, Gambrel agreement was nothing more than his cautious effort to truthfully testify about an event for which he simply had no memory.

At the hearing, George Payne, who was a major at the Maximum Control Facility in 2001, testified that he had no recollection of meeting with Pavey after the cell

5

extraction. Neither did he have any recollection of Pavey asking for assistance to prepare a grievance. Indeed, he had no recollection of any inmate having ever asked him for assistance to fill out a grievance. He was certain that he did not take a photograph of Pavey because he did not take photographs. He testified that none of the circumstances of this case would have made him more likely to want to talk to Pavey than to any other inmate who had been extracted from his cell. He testified that he had no memory of having contacted the grievance specialist even though that is what he would have done if an inmate had asked for assistance or if an inmate had complained to him about having been the victim of excessive force. The Court finds Payne to be credible and credits this testimony. In addition, Payne testified that it was possible that he met with Pavey in his office and that it was possible that Pavey asked for help filing out a grievance. This testimony is not creditable. As before, Payne's willingness to agree to hypothetical possibilities does not convince the Court that those events occurred, or even that they could have occurred. Based on the totality of the testimony presented at the hearing, it is not creditable that Pavey met with Payne and asked him for assistance preparing a grievance. Pavey has never mentioned speaking to the grievance specialist, yet if he had complained to Payne about an excessive use of force, Payne would have summoned the grievance specialist to prepare a grievance. Therefore because Pavey did not speak to the grievance specialist, it is not creditable that he met with Payne. Because it is unreasonable to believe that Pavey had an official meeting with Payne about the

cell extraction and did not complain about an excessive use of force, it is not reasonable to believe that he ever had an official meeting with Payne in his office.

Pavey, the plaintiff in this case, testified that his left arm was broken during a cell extraction on October 14, 2001, between 8:00 and 10:00 in the morning. In his original response to the motion for summary judgment, filed on October 12, 2004, Pavey wrote that,

> The plaintiff did not timely grieve "formally" the alleged use of force, he did however, informally grieved to Lt. Surney, Lt. Gambrel, Sgt. B. Johnson (Jackson), Capt. Galackos, Case Manager (Assistant Superintendent) Pam Bane, and Major George Payne . . ..

[Doc. No. 39-2 at 9]. Despite having listed six prison officials in that response, during the hearing he only testified about having spoken to four of them. He presented no testimony about having had a conversation with Pamela Jean Bane or Steven Gallegos. Those omissions, along with his demeanor on the stand, including his facial expressions, undermined Pavey's credibility. Because he did not testify about his conversations with either of them, the Court finds that he did not speak to them about the cell extraction and that his inclusion of them in his summary judgment response was a fabrication. After a review of all of the testimony, the Court also concludes that much of his testimony was fabricated after the fact in an effort to survive summary judgment.

Pavey testified that he called Brenda Jackson Nalls to his cell by pushing his intercom button and spoke to her for approximately 30 minutes. This is inconsistent

7

with her testimony that she spoke to him while she was making rounds for only a couple of minutes. He testified that she asked him questions, but this is inconsistent with her testimony that she did not. He testified that she said she would inform Lt. Surney about his complaints related to the cell extraction, but this too is inconsistent with her testimony. Though the Court credits Pavey's testimony that he spoke to Nalls, the remainder of his testimony about his conversation with her is not credible.

Pavey testified that Duane Vance Surney came to his cell and spoke to him for 20 to 30 minutes. Surney has no memory of speaking to Pavey. Pavey testified that he told Surney about the cell extraction and that Surney promised to write a report for Major Payne. Surney has no memory of any of this. If Pavey's version of events were true, then Surney spoke to Nalls about Pavey's case, Surney deliberately came to Pavey to discuss the case, Surney spent 20-30 minutes talking to Pavey, Surney wrote a report, and Surney delivered the report to Major Payne. Accomplishing all of those things would have involved a substantial part of his shift. A major injury during a cell extraction is an unusual event, and reporting potential wrongdoing by other prison employees is an emotionally charged action. If Pavey is believed, Surney has forgotten an unusual, emotionally-laden event which lasted for a substantial part of a day. That is simply not credible. Neither is it credible that Surney was willing to report his fellow prison employees at the time that he worked there, but now, years after he left that job, is attempting to protect them by lying. Furthermore, if that were his goal, he could have

testified that he was certain that he did not speak to Pavey. Based on the testimony presented, the Court finds that Pavey fabricated his conversation with Surney.

Pavey testified that he was taken to George Payne's office where he spoke to both Payne and Donald Gambrel for 30 to 45 minutes. Neither of them have any memory of that meeting. Pavey testified that Payne took photographs of his injuries while Gambrel assisted. This is inconsistent with the testimony of both Payne and Gambrel who were certain that Payne did not take photographs. Pavey testified about what he said during the meeting and promises that Payne made to him, but the Court does not find any of those statements creditable. Indeed, based on the totality of the evidence presented during the hearing, the Court finds that no such meeting ever occurred.

During the hearing, Pavey offered two exhibits which were admitted. Both of them are Disciplinary Hearing Appeals. [Doc. No. 159-1 and 159-2]. Pavey stated that "These documents show that internal affairs conducted an investigation into the conduct of the staff who participated in the October 14, 2001 cell extraction in which Pavey's arm was broken, which is the subject of this excessive force lawsuit." [Doc. No. 159 at 2]. The defendants did not dispute that internal affairs conducted an investigation and the Court finds that to be an undisputed fact.

## II. CONCLUSIONS OF LAW

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions until "such

9

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Id. at 1023. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." Ngo at 102; Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The "availability" of a remedy is not a matter of what appears on paper, but rather whether the process was in actuality available for the prisoner to pursue. Kaba at 684. When prison officials prevent inmates from using the administrative process, such as by failing to provide him the necessary forms, administrative remedies are not considered to be available. Id. In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." Dole at 809. In determining whether an

10

administrative remedy was available, the bottom line is whether the inmate did "all that was reasonable to exhaust" under the circumstances. Id. at 812.

Here, it is undisputed that the Maximum Control Facility had administrative procedures for filing a grievance. Neither is it disputed that those procedures required Pavey to file a grievance within 48 hours of the events which he sought to grieve. Based on the testimony presented during the hearing, the Court has found that Pavey's only communication about the events relevant to his cell extraction during that 48 hour period was with Brenda Jackson Nalls. During that conversation, which lasted only a couple of minutes, Pavey did not complain, rather he merely chit-chatted about what had happened to him. He did not ask for help to complete a grievance nor even say that he intended to file one. Nothing in that conversation would have alerted Nalls that she should have helped Pavey to file a grievance. Nothing about that conversation gave Pavey any basis for believing that he had made a reasonable effort to file a grievance. Nothing in that conversation or in Nalls actions constituted an institutional impediment which prevented Pavey from seeking assistance with filing a grievance.

Pavey argues that the Disciplinary Hearing Appeals [Doc. No. 159-1 and 159-2] that he admitted during the hearing, "relate to the issue currently before the Court because they corroborate Pavey's reasonable belief that he had done all that was necessary to satisfy the grievance process." [Doc. No. 159 at 2]. The Court disagrees. First, there was no basis for Pavey to believe that he had done anything to satisfy the grievance process, much less that he had done all that was necessary. Second, the Court

11

does not believe that Pavey gave any thought to the grievance process during those first 48 hours even though he was mentally able to have done so. Third, there is no evidence that Pavey knew anything about an internal affairs investigation during those 48 hours. Fourth, internal affairs investigations are unrelated to the grievance process and do nothing to obviate an inmate's obligation to comply with the grievance procedures. Therefore the Court finds that the exhibits, though admitted, have no relevance to this case.

In summary, the Court concludes that the defendants have met their burden and have proven that Pavey did not exhaust his administrative remedies due to his own failings and not due to any affirmative misconduct by prison staff that prevented him from exhausting. Because Pavey did not satisfy the exhaustion requirement before bringing this lawsuit, the case is subject to dismissal.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the case be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**NOTICE IS HEREBY GIVEN** that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b). Failure to file objections within the specified time waives the right to appeal. *See*

Thomas v. Arn, 474 U.S. 140 (1985); Lerro v. Quaker Oats Co., 84 F.3d 239 (7th Cir. 1996).

    **SO ORDERED**

Dated this 23rd Day of August, 2010.

                                                    S/Christopher A. Nuechterlein
                                                    Christopher A. Nuechterlein
                                                    United States Magistrate Judge